1   **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9   Michael Taraska, a married man, The            No.  CV-12-2544-PHX-DGC
    Phoenician Dynasty, LLC, an Arizona
10   limited liability company,                    **ORDER**

11                          Plaintiffs,

12   v.

13   Aaron Ludwig, a married man, Thomas C.
     Horne in his capacity as Director of the
14   Arizona Attorney General's Office, and The
     State of Arizona,
15
                            Defendants.
16
            Before the Court is the motion to dismiss filed by Defendant Aaron Ludwig
17
     (Doc. 4), the motion to dismiss filed by Defendants the State of Arizona and Arizona
18
     Attorney General Thomas Horne ("the State Defendants") (Doc. 5), and the motion to
19
     remand filed by Plaintiffs (Doc. 10).  Plaintiffs did not file a reply to Ludwig's response
20
     to the motion to remand.  The motions are fully briefed.  For the reasons set forth below,
21
     the Court will deny Ludwig's motion, and grant in part and deny in part the State
22
     Defendants' motion.[1]
23

24

25
     _____

26          [1] Plaintiffs' requests for oral argument are denied.  The parties' briefings and other
     submissions have more than amply addressed the issues raised by these motions, and oral
27   argument will not aid the Court's decision.  *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*,
     141 F.3d 920, 926 (9th Cir. 1998).
28

## I.    Background.

Plaintiff The Phoenician Dynasty, LLC ("TPD") operates Cheetah's Gentleman's Club in Phoenix, Arizona.  Doc. 1-2 at 10-24, ¶¶ 14-17.  Plaintiff Michael Taraska is TPD's general manager.  *Id.* at ¶ 19.  TPD owns Arizona liquor license number 06070496 (*id.* at ¶ 18), and Peter James Homenick is the sole liquor agent of record for TPD (*id.* at ¶ 20).  NEC-7, LLC ("NEC-7") is TPD's landlord under a 10-year lease executed in October 2004.  *Id.* at ¶¶ 22-23.  Taraska is NEC-7's managing member.  *Id.* at ¶ 24. Vozhd Management Company, LLC ("Vozhd") is the 100% member and manager of Cheetah Operations, LLC ("Cheetah Operations").  *Id.* at ¶¶ 25, 27.  Homenick is the 100% member and manager of Vozhd.  *Id.* at ¶ 26.  Cheetah Operations owns a 50% membership interest in TPD and is the manager/member of TPD.  *Id.* at ¶ 28.

Julian Carlicci previously owned the other 50% membership interest in TPD. Doc. 1-2 at 48, 51, 69.  On June 2, 2006, Carlicci and Cheetah Operations executed a member agreement whereby Cheetah Operations paid Carlicci $100,000 in exchange for Carlicci assigning all of his voting rights in TPD to Cheetah Operations, and for Carlicci resigning as manager/member and appointing Cheetah Operations as TPD's new manager/member.  *Id.* at 69-73.  The Second Amendment to TPD's Operating Agreement requires a vote of 60% to make any changes to TPD's corporate structure. *Id.* at 10-24, ¶ 75.

On May 16, 2011, the Maricopa County Superior Court approved a settlement agreement between the State of Arizona and Homenick.  Doc. 1-2 at 47-48. The agreement provides that the State now holds the 50% interest in TPD previously held by Carlicci "pursuant to A.R.S. § 13-4310(F), the Warrant, and the forfeiture on July 28, 2009." *Id.* at 48.  The agreement also provides that "[t]he intent of the Parties is to confer no rights on . . . the State other than those expressly contained in the provisions of this Agreement." *Id.*  The State did not become a member of TPD, and did not file paperwork with the Arizona Corporation Commission as required by law to effectuate ownership changes in the composition of TPD.  Doc. 1-2 at 10-24, ¶¶ 39-40.  Defendants did not file

paperwork with the Arizona Department of Liquor License and Control ("ADLLC") to become an alleged "control person" as statutorily required under A.R.S. § 4-101(9). *Id.* at ¶ 41.

On July 15, 2011, Ludwig filed a "Form LIC 110 - INACTIVE STATUS FORM" ("Form LIC 110") with the ADLLC to deactivate TPD's liquor license. *Id.* at ¶ 29. Ludwig stated on the form that the liquor license was not in use because "It is in the process of being sold," and that "The buyer of the license will presumably place the license in use." *Id.* at ¶¶ 30, 32. At the time, TPD's liquor license was not for sale, TPD did not intend to sell the license, and no identifiable buyer for the license existed. *Id.* at ¶¶ 31-33, 35, 44-46.

On July 18, 2011, TPD and Taraska learned that the liquor license had been deactivated when an investigator and two uniformed Phoenix police officers arrived at Cheetah's to shut it down. *Id.* at ¶ 37.

On July 20, 2011, Ludwig unsuccessfully solicited the aid of Homenick's bankruptcy trustee's attorney, Kevin McCoy, in an email requesting that McCoy state that the bankruptcy trustee sanctioned the deactivation of TPD's liquor license. *Id.* at ¶¶ 48-49. McCoy responded in an email dated July 22, 2011, denying that the bankruptcy trustee had sanctioned Defendants actions. *Id.* at ¶ 50.

Taraska returned to Phoenix on August 4, 2011, to address the liquor license deactivation. *Id.* at ¶ 55. Two Arizona Attorney General detectives and two uniformed Phoenix police officers met Taraska at the airport. *Id.* at ¶¶ 56-57. The officers met Taraska and escorted him to a secluded area of the airport. *Id.* at ¶ 56.

On August 25, 2011, the ADLLC reactivated TPD's liquor license. *Id.* at ¶ 58. Cheetah's reopened on August 26, 2011. *Id.* at ¶ 60.

On August 26, 2011, Ludwig filed another Form LIC 110. *Id.* at ¶ 62. This form stated that the license was inactive because "The State of Arizona may not operate a liquor establishment." *Id.* at ¶ 63. The form also stated that "the buyer of the 'State's interest' will presumably place the license in use." *Id.* at ¶ 64. TPD and Taraska were

1   not given notice of the filing until after 5:00 p.m. on August 26, 2011.  *Id.* at ¶ 66.  At

2   approximately 5:10 p.m. on August 26, 2011, 12 individuals, including Arizona Attorney

3   General investigators, Phoenix police department officers, and S.W.A.T. team members,

4   arrived   at   Cheetah's   to   deliver   a   "Notice   to   all   Employees"   to   Taraska.

5   *Id.* at ¶ 68.  At about 5:25 p.m., Ludwig called Taraska claiming that Taraska had "two

6   thugs sent to [his] home to threaten and intimidate him."  *Id.* at ¶¶ 69-70.

7   　　　Plaintiffs' claim that TPD incurred damages as a result of the closure of Cheetah's

8   from mid-July to September 1, 2011, and additional attorneys' fees.  *Id.* at ¶¶ 85-88.

9   Plaintiffs' complaint asserts the five causes of action against all Defendants:  (1) a

10  defamation claim, (2) a § 1983 claim, (3) a conversion claim, (4) an intentional

11  interference  with  contract  and/or  business  relationship  claim,  and  (5)  an  intentional

12  interference with prospective business advantage claim.  Doc. 1-2 at 19-24.

13  **II.    Legal Standard.**

14  　　　When analyzing a complaint for failure to state a claim to relief under Rule

15  12(b)(6), the well-pled factual allegations are taken as true and construed in the light

16  most favorable to the nonmoving party.  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th

17  Cir. 2009).  Legal conclusions couched as factual allegations are not entitled to the

18  assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are

19  insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec.*

20  *Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).  To avoid a Rule 12(b)(6) dismissal, the

21  complaint must plead enough facts to state a claim to relief that is plausible on its face.

22  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This plausibility standard "is not

23  akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

24  defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at

25  556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere

26  possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the

27  pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

28  */ / /*

**III.     Analysis.**

    **A.     Ludwig's Motion to Dismiss.**

       Ludwig moves to dismiss Plaintiffs' claims for the following reasons:  (1) absolute prosecutorial immunity bars Plaintiffs' claims, (2) Plaintiffs failed to provide written notice prior to filing suit as required under A.R.S. § 12-821.01(A), (3) the claims are untimely,  and  (4)  Plaintiffs'  claim  for  punitive  damages  is  barred  by  A.R.S. § 12-820.04.

               **1.     Absolute Prosecutorial Immunity.**

       Mr. Ludwig submits that he is entitled to absolute prosecutorial immunity under federal and state law for his actions that gave rise to Plaintiffs' claims.  Doc. 4 at 3-5. Ludwig argues that he acted as an attorney for the State of Arizona in deactivating TPD's liquor license pursuant to a forfeiture proceeding in which the State acquired a 50% interest in TPD, and that the deactivation was authorized under A.R.S. § 13-4310(F) ("All property, including all interests in such property, declared forfeited under this title vests in this state on the commission of the act or omission giving rise to forfeiture under this title together with the proceeds of the property after such time.").  *Id.* at 5.

       Prosecutors have absolute immunity from damages in civil suits for activities "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case."  *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).  This immunity extends to civil enforcement proceedings.  *See Butz v. Economou*, 438 U.S. 478, 515-17 (1978); *State v. Super. Ct. In and For Cnty. of Maricopa*, 921 P.2d 697, 700-01 (Ariz. Ct. App. 1996); *see also Torres v. Horne*, No. CV-06-2482-PHX-SMM, 2012 WL 3818974, at *7-10 (D. Ariz. Sept. 4, 2012) (finding that absolute immunity applied to the initiation of an action against property pursuant to a seizure warrant).  "The presumption is that qualified rather than absolute immunity is sufficient to protect governmental officials in the exercise of their duties."  *Burns v. Reed*, 500 U.S. 478, 487-88 (1991) (noting that the Court has "been quite sparing in [its] recognition of absolute immunity, and ha[s] refused to extend it any further than its

justification would warrant." (internal quotation marks and citations omitted)).  "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question."  *Id.* at 486.

In determining immunity, the Court accepts the allegations in Plaintiffs' amended complaint as true.  *See Kalina v. Fletcher*, 522 U.S. 118, 122 (1997) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 261 (1993)).  The amended complaint alleges that Ludwig made false statements on the Form LIC 110 that he submitted (Doc. 1-2 at 10-24, ¶¶ 30-33, 35-36, 45), that Ludwig did not have authority to file a Form LIC 110 (*id.* at ¶¶ 34, 65), that Ludwig stated false facts about Taraska to Phoenix police officers and an Arizona Attorney General detective (*id.* at ¶¶ 45, 83), and that Ludwig attempted to conceal his unauthorized actions (*id.* at ¶¶ 47-50).  Based on the pleadings, the Court cannot determine that Ludwig's alleged activities are "functionally comparable" to those of a judge or a prosecutor warranting application of absolute prosecutorial immunity.  Even if Ludwig's deactivation of TPD's liquor license was a "quasi-judicial" activity for which absolute prosecutorial immunity applies, that immunity would not extend to all of Ludwig's allegedly harmful conduct.[2]  *See Torres v. Horne*, No. CV-06-2482-PHX-SMM, 2012 WL 3818977, at *7 (D. Ariz. Sept. 4, 2012).  Accordingly, the Court denies Ludwig's motion to dismiss on this ground.

### 2.   Claim Notice:  A.R.S. § 12-821.01(A).

Ludwig contends that he is entitled to dismissal of Plaintiffs' claims because Plaintiffs failed to comply with Arizona's notice of claim statute.  Doc. 4 at 2-3.  The statute requires a plaintiff to serve notice of the claim on a public employee before filing a lawsuit against the public employee.  A.R.S. § 12-821.01(A).  In support of this

---

[2] Ludwig argues in his reply brief (Doc. 14) that absolute immunity applies to his reporting to relevant authorities of his concerns about potential crimes (*id.* at 5-7).  The Court will not consider arguments raised for the first time in a reply brief.  *Lentini v. Cal. Ctr. for the Arts,* 370 F.3d 837 n. 6 (9th Cir.  2004); *Gadda v. State Bar of Cal.,* 511 F.3d 933, 937 n. 2 (9th Cir. 2007).

argument, Ludwig submitted an exhibit.  Doc. 4-1.  Plaintiffs have also submitted several exhibits in support of their separate responses to Ludwig's motion.  Doc. 7, Exs. 1-7 & Exs. A-E; Doc. 8, Exs. 1-4. In his reply, Ludwig observes that both parties have submitted material outside of the pleading and concludes that "all parties are apparently treating the motion as one for summary judgment, and there is no basis for denying the motion simply because of the way it is captioned."  Doc. 14 at 9.

Rule 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Ludwig's motion to dismiss is more like the procedural defense under Rule 12(b)(5) for insufficient process than a Rule 12(b)(6) motion to dismiss for failure to state a claim.  *See McGrath v. Scott*, 250 F. Supp. 2d 1218, 1236 (D. Ariz. 2003) ("A.R.S. § 12-821.01(A)'s requirement for filing a notice of claim constitutes a 'procedural rather than a jurisdictional requirement.'" (quoting *Young v. City of Scottsdale,* 970 P.2d 942, 945 (Ariz. Ct. App. 1998)).  Because Ludwig's notice argument does not arise under Rule 12(b)(6), his motion is not subject to conversion to a motion for summary judgment.  The Court may consider the exhibits submitted by both parties for the purposes of Ludwig's notice of claim argument.[3]  *See Traveler Cas. & Sur. Co. of America v. Telstar Const. Co., Inc.*, 252 F. Supp. 2d 917, 922 (D. Ariz. 2003) ("Parties may submit affidavits and exhibits with a motion to dismiss under Rule 12(b)(5).").

Under Arizona Rule of Civil Procedure 4.1(d), service upon an individual requires personal delivery to the defendant, to the defendant's authorized agent, or to a person of suitable age and discretion residing at the defendant's "dwelling house or usual place of abode."  Ludwig submits that Plaintiffs service of the notice of claim was insufficient

---

[3] The Court clarifies that it only considered these exhibits for this argument and that otherwise, in ruling on these motions, matters outside the pleadings were excluded and not considered.

because it was left with a desk person at the Attorney General's office, Ludwig's former place of employment.  Doc. 4 at 2; Doc. 4-1.  Plaintiffs argue that the desk person was authorized to receive service of process on behalf of Ludwig and point to the process server's affidavit as evidence that the desk agent was "designated to accept service on behalf of the Arizona State Attorney General and at the time employed Assistant Attorney Generals for Arizona State."  Doc. 7 at 3, 15-20; Doc. 8 at 4.

"[T]he process server's return will provide a prima facie case as to the facts of service," and, "[i]n fact, a signed return of service can be overcome only by strong and convincing evidence put forth by the complaining party."  *Cheng v. AIM Sports, Inc.*, No. CV 10-3814 PSG, 2011 WL 320993, at *2 (C.D. Cal. Jan. 26, 2011) (internal quotations and citations omitted); *see also S.E.C. v. Internet Solutions for Bus. Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007) (signed return of service constitutes prima facie evidence of proper service in context of default judgment).  Accordingly, the Court cannot find from the current briefing that Plaintiffs' delivery of the notice of claim to the desk person failed to comply with A.R.S. § 12-821.01(A).  This may be addressed again in summary judgment briefing, if warranted.[4]

Ludwig also argues that Plaintiffs failed to provide notice of the claim within 180 days of July 15, 2011, the date on which Plaintiffs should have learned of the action giving rise to their claims.  Doc. 4 at 2-3.  Plaintiffs served their notice on January 9, 2012 (Doc. 4-1; Doc. 7 at 15-20), a date within 180 days of July 15, 2011.  The Court denies Ludwig's motion on the ground as well.

### 3.    Statute of Limitations.

Ludwig argues that Plaintiffs' claims are barred by the statute of limitations (Doc. 4 at 3), because A.R.S. § 12-821 requires that all actions against a public employee

---

[4] In his reply brief, Ludwig argues that the desk person was not authorized to accept service on his behalf.  Doc. 14 at 7.  The Court will not consider arguments raised for the first time in a reply brief.  *See Bach*, 473 F. Supp. 2d at 1122 n. 6; *Gadda*, 511 F.3d at 937 n. 2.  Moreover, the record lacks evidence supporting Ludwig's contention.

be brought within one year after the cause of action accrues.  "[T]he statute of limitations defense . . . may be raised by a motion to dismiss . . . [i]f the running of the statute is apparent on the face of the complaint."  *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (citing *Graham v. Taubman*, 610 F.2d 821 (9th Cir. 1979)).  Even if the relevant dates alleged in the complaint are beyond the statutory period, however, the complaint cannot be dismissed "'unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'"  *Hernandez v. City of El Monte*, 138 F.3d 393, 402 (9th Cir. 1998) (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995); *see Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993).

Ludwig asserts that Plaintiffs' claims accrued on July 15, 2011, the date he filed the Form LIC 110 to deactivate the liquor license.  Doc. 4 at 3.  Plaintiffs contend that their causes of action did not accrue until July 18, 2011, the date they learned that the liquor license had been deactivated.  Doc. 7 at 4-6; Doc. 8 at 5.  Plaintiffs therefore contend that their July 17, 2012, complaint (Doc. 1) was timely.  Doc. 7 at 5-6; Doc. 8 at 5.  Because it does not appear that Plaintiffs can prove no set of facts that would establish the timeliness of their claims, the Court will deny Ludwig's motion to dismiss on statute of limitations grounds.[5]

### 4.    Punitive Damages.

Ludwig argues that Plaintiffs' claim for punitive damages is barred under A.R.S. § 12-820.04, which provides that "[n]either a public entity nor a public employee acting within the scope of his employment is liable for punitive or exemplary damages."  Doc 4

---

[5] Ludwig argues in his reply brief (Doc. 14) that on July 15, 2011, the ADLLC's website showed that TPD's liquor license was deactivated and, because the information was publicly available, Plaintiffs should have known on that date of the action giving rise to their claims (*id.* at 8-9).  The Court will not consider arguments raised for the first time in a reply brief.  *Bach*, 473 F. Supp. 2d at 1122 n. 6; *Gadda*, 511 F.3d at 937 n. 2.

at 5.  Plaintiffs argue the statute is inapplicable to their claims because some of Ludwig's actions were outside the scope of his employment and were even unlawful.  Doc. 7 at 11-13; Doc. 8 at 6.  The amended complaint alleges that Ludwig "is an agent of Defendant AG and Defendant Arizona" (Doc. 1-2 at 10-24, ¶ 9), that Ludwig "acted on behalf of Defendant AG and Defendant Arizona" (*id.* at ¶ 10), and that "the actions of [] Ludwig were done on behalf of, and at the specific direction of Defendants AG and Defendant Arizona" (*id.* at ¶ 11).  The allegations in the amended complaint, taken as true, indicate that Ludwig was acting within the scope of his employment.  Accordingly, Plaintiffs are precluded from seeking punitive damages for their state law claims against Ludwig.  Punitive damages are available, however, for Plaintiffs' § 1983 claim if Plaintiffs can show that Ludwig exhibited "reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade* , 461 U.S. 30, 56 (1983).  The Court finds the pleadings sufficient to support a plausible finding of "reckless or callous indifference" and therefore will deny Ludwig's motion to dismiss Plaintiffs' request for punitive damages.

## B.    The State Defendants' Motion.

The State Defendants' argue that Plaintiffs' claims are barred by the Eleventh Amendment of the Constitution (Doc. 5 at 1, 2-3), and submit that Plaintiffs' § 1983 claim must be dismissed because they are not "persons" subject to liability under 42 U.S.C § 1983 (*id.* at 3).  The Eleventh Amendment bars suits against states and state officials acting in their official capacities to the extent the suit seeks monetary relief.  *See Edelman v. Jordan,* 415 U.S. 651, 677-78 (1974); *Hafer v. Melo,* 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity . . . should be treated as suits against the State.").  Plaintiffs argue that the State Defendants waived their right to sovereign immunity by consenting to the removal of this case to federal court.  Doc. 9 at 3 (citing *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 624 (2002)); *see also Embury v. King*, 361 F.3d 562, 564-66 (9th Cir. 2004) (noting "that the federal court's power extends, once immunity is waived, to the entire case" and not just to state law claims).  In reply, the State Defendants argue that, unlike in *Lapides* where all

defendants joined in the removal, here the State Defendants merely consented to removal and that consent "did not constitute an unequivocal waiver of its sovereign immunity." Doc. 13 at 3 (citing *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999)).

The Supreme Court in *Lapides* noted that removal requires the consent of all defendants and found that because the state had voluntarily agreed to remove the case to federal court, the state "voluntarily invoked the federal court's jurisdiction."  535 U.S. at 620 (citing 28 U.S.C. § 1446(a)) (other citations omitted).  The Court did not distinguish between the act of removal and consenting to removal, and instead noted that its precedent requiring a "clear" indication of the State's intent to waive its immunity "distinguished the kind of constructive waivers repudiated there from waivers effected by litigation conduct."  *Id.* (citing *Coll. Sav. Bank*, 527 U.S. at 675-81, n. 3).  Eleventh Amendment waiver by litigation conduct is necessary to "avoid inconsistency, anomaly, and unfairness."  *Id.*  "The relevant 'clarity' here must focus on the litigation act the State takes that creates the waiver.  And that act – removal – is clear."  *Id.*

In *Mink v. Arizona*, the Court dismissed state defendants pursuant to the Eleventh Amendment in an action removed from state court because "the State Defendants did not authorize removal of this case . . . [a]s a result, the Court cannot conclude that the State Defendants waived their sovereign immunity by removing the case to federal court."  No. CV-09-2582 PHX DGC, 2010 WL 2594355, at *4 (D. Ariz. June 23, 2010), *aff'd*, 475 Fed. Appx. 202, 203 (9th Cir. 2012).  Prior to dismissing the state defendants in *Mink*, the plaintiff filed a motion to remand contending that removal was improper because the state defendants had not authorized removal.  Pl.'s Mot. Remand, *Mink*, Doc. 18.  The Court denied plaintiff's motion to remand as untimely (Min. Entry, *Mink*, Doc. 23), and thus although the state defendants had not consented to removal, the case remained in federal court.  Here, there is no allegation that Ludwig unilaterally removed this action.  *See* Doc. 13 at 3 ("[I]t was Defendant Ludwig that removed this action and the State merely consented to Ludwig's removal.").  Instead, the State Defendants

voluntarily consented to removal.  Doc. 1.  Such litigation conduct amounts to a voluntary invocation of the federal court's jurisdiction and a waiver of the State Defendants' Eleventh Amendment immunity.[6]  *See Lapides*, 535 U.S. at 618-24.  Accordingly, the Court denies the State Defendants' motion with respect to their Eleventh Amendment argument.

The State Defendants argue that Plaintiffs cannot seek money against the State or Arizona Attorney General Horne in his official capacity (Doc. 1-2 at 10-11) because neither is a "person" subject to liability under 42 U.S.C. § 1983.  The State Defendants are correct.  The United States Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).  As a result, the Court must dismiss Plaintiffs' § 1983 claims against the State Defendants.

**C.    The Motion to Remand.**

Plaintiffs' motion to remand argues that if the Court does not find that the State Defendants waived their Eleventh Amendment sovereign immunity, the action should be remanded because removal was improper because not all Defendants consented to removal.  Doc. 10 at 2; Doc. 11 at 2; Doc. 12.  Given the Court's finding above, the Court denies the' motion to remand.

**IT IS ORDERED:**

1.    Ludwig's motion to dismiss (Doc. 4) is **denied**.

2.    The State Defendant's motion to dismiss (Doc. 5) is **granted** with respect to Plaintiffs' § 1983 claim only.  The motion is **denied** with respect to the Eleventh Amendment.

3.    Plaintiffs' motion to remand (Doc. 10) is **denied**.

---

[6] The State of Arizona conceded this point in a notice filed on February 15, 2013. Doc. 18.

1       4.      The Court will schedule a Rule 16 Case Management Conference by

2       separate order.

3   Dated this 21st day of February, 2013.

4

5

6

7   _____

                    David G. Campbell

8               United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28